# Exhibit 10

JURY

## U.S. District Court
## Eastern District of TEXAS [LIVE] (Marshall)
## CIVIL DOCKET FOR CASE #: 2:26-cv-00201-JRG

ABC IP LLC et al v. TRG Ventures, LLC d/b/a Mission Ridge Range and Academy, a limited liability company et al
Assigned to: District Judge Rodney Gilstrap
Cause: 35:271 Patent Infringement

Date Filed: 03/13/2026
Jury Demand: Plaintiff
Nature of Suit: 830 Patent
Jurisdiction: Federal Question

**Plaintiff**

**ABC IP LLC**

represented by **Matthew Alan Colvin**
Fish & Richardson P.C. - Dallas
1717 Main Street, Suite 5000
Dallas, TX 75201
214-747-5070
Fax: 214-747-2091
Email: colvin@fr.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Rare Breed Triggers, Inc.**

represented by **Matthew Alan Colvin**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**TRG Ventures, LLC d/b/a Mission Ridge Range and Academy, a limited liability company**

**Defendant**

**TRG Ventures, LP, a Texas limited partnership**

| Date Filed | # | Docket Text |
|---|---|---|
| 03/13/2026 | 1 | COMPLAINT *for Patent Infringement* against All Defendants ( Filing fee $ 405 receipt number ATXEDC-11423939.), filed by ABC IP LLC, Rare Breed Triggers, Inc.. (Attachments: # 1 Exhibit A - USP 10,514,223, # 2 Exhibit B - USP 11,724,003, # 3 Exhibit C - USP 12,036,336, # 4 Exhibit D - USP 12,274,807, # 5 Civil Cover Sheet) (Counsel is reminded to file form required by LR CV-4(a).)(Colvin, Matthew) (Entered: 03/13/2026) |
| 03/13/2026 | 2 | Notice of Filing of Patent/Trademark Form (AO 120). AO 120 emailed to the Director of the U.S. Patent and Trademark Office. (Colvin, Matthew) (Entered: 03/13/2026) |
| 03/13/2026 | 3 | Fed. R. Civ. P. 7.1(a)(1) Disclosure Statement filed by ABC IP LLC (Colvin, Matthew) (Entered: 03/13/2026) |
| 03/13/2026 | 4 | Fed. R. Civ. P. 7.1(a)(1) Disclosure Statement filed by Rare Breed Triggers, Inc. (Colvin, Matthew) (Entered: 03/13/2026) |
| 03/13/2026 | 5 | Request for Clerk to issue Summons filed by ABC IP LLC, Rare Breed Triggers, Inc.. (Attachments: # 1 Summons to TRG Ventures, LP) (Colvin, Matthew) (Entered: 03/13/2026) |
| 03/16/2026 | | Case assigned to District Judge Rodney Gilstrap. (NKL) (Entered: 03/16/2026) |
| 03/16/2026 | | Case: ABC IP LLC et al v. TRG Ventures, LLC d/b/a Mission Ridge Range and Academy, a limited liability company et al was filed on 3/16/2026 and assigned to Judge Gilstrap. The Notice Regarding Consent to Proceed Before Magistrate Judge form is provided via hyperlink. (NKL) (Entered: 03/16/2026) |
| 03/16/2026 | 6 | Summons issued as to TRG Ventures, LLC d/b/a Mission Ridge Range and Academy, a limited liability company c/o Registered Agent - Corporate Service Center, TRG Ventures, LP, a Texas limited partnership c/o Registered Agent - Corporate Service Center. (Attachments: # 1 Additional Attachment(s))(NKL) (Entered: 03/16/2026) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 03/19/2026 12:30:22 | | | |
| **PACER Login:** | paulswanson | **Client Code:** | 99910.0011 |
| **Description:** | Docket Report | **Search Criteria:** | 2:26-cv-00201-JRG |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

**ABC IP, LLC, a Delaware limited liability company,**

**and**

**RARE BREED TRIGGERS, INC., a Texas corporation,**

**Plaintiffs.**

**v.-**

**TRG VENTURES, LLC d/b/a MISSION RIDGE RANGE AND ACADEMY, a limited liability company,**

**and**

**TRG VENTURES, LP, a Texas limited partnership,**

**Defendants.**

CASE NO. ___________

**COMPLAINT FOR PATENT INFRINGEMENT**

**JURY TRIAL DEMANDED**

This is an action for patent infringement in which ABC IP LLC ("ABC") and Rare Breed Triggers, Inc. ("Rare Breed") (collectively, "Plaintiffs") accuse TRG Ventures, LLC d/b/a Mission Ridge Range & Academy and TRG Ventures, LP ("TRG") (collectively, "Defendants"), of infringing U.S. Patent Nos. 10,514,223, 11,724,003, 12,036,336, and 12,274,807 as follows:

## PARTIES

1. ABC is a limited liability company organized under the laws of the State of Delaware with an address at 8 The Green, Suite A, Dover, Delaware 19901.

2. Rare Breed is a Texas corporation having a place of business at 2710 Central Freeway, Suite 150-151, Wichita Falls, TX 76306.

3. Upon information and belief, TRG Ventures, LLC d/b/a Mission Ridge Range and Academy is a limited liability company organized under the laws of Texas with a business address of 4340 Mapleshade Lane, Plano, TX 75093, and is a subsidiary of TRG Ventures, LP.

4. Upon information and belief, TRG Ventures, LP is a Texas limited partnership, with a mailing address of P.O. Box 5558, San Antonio, TX 78201-0558 and a Registered Agent with an address at 15500 Voss Rd., Ste. 425, Sugar Land, TX 77498, and controls its subsidiary TRG Ventures LLC.

## JURISDICTION AND VENUE

5. This is an action for patent infringement arising under 35 U.S.C. §§ 271(a)-(c), 281, and 283-85.

6. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1338, which directs that United States District Courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents and pursuant to 28 U.S.C. § 1331, which pertains to civil actions arising under the laws of the United States.

7. Personal jurisdiction over Defendants is proper in this District because the Defendants reside in and have a regular and established place of business in this District, and have therefore purposely availed themselves of the privileges and benefits of the laws of the State of Texas.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1400(b). Defendants reside in and/or have committed acts of infringement and have a regular and established place of business in this District, including at least at the storefront at 4340 Mapleshade Lane, Plano, TX 75093.

## BACKGROUND

9. This lawsuit asserts direct, contributory, and induced infringement of U.S. Patent 10,514,223 ("the '223 Patent"), 11,724,003 ("the '003 Patent"), 12,036,336 ("the '336 Patent"), and 12,274,807 ("the '807 Patent) ("the Asserted Patents").

10. The '223 Patent was lawfully and properly issued by the United States Patent and Trademark Office on December 24, 2019. Each and every claim of the '223 Patent is valid and enforceable. A true and correct copy of the '223 Patent is attached as Exhibit A.

11. The '003 Patent was lawfully and properly issued by the United States Patent and Trademark Office on August 15, 2023. Each and every claim of the '003 Patent is valid and enforceable. A true and correct copy of the '003 Patent is attached as Exhibit B.

12. The '336 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 16, 2024. Each and every claim of the '336 Patent is valid and enforceable. A true and correct copy of the '336 Patent is attached as Exhibit C.

13. The '807 Patent was lawfully and properly issued by the United States Patent and Trademark Office on April 15, 2025. Each and every claim of the '807 Patent is valid and enforceable. A true and correct copy of the '807 Patent is attached as Exhibit D.

14. ABC is the current owner by assignment of all right, title and interest in and to the Asserted Patents. These assignments have been recorded at the United States Patent and Trademark Office ("USPTO").

15. Rare Breed is the exclusive licensee of the Asserted Patents.

16. Plaintiffs have complied with the requirements of 35 U.S.C. § 287 either because the Asserted Patents are not practiced by ABC or any licensee and/or because any licensee has been required to mark its product.

17. Upon information and belief, Defendants have committed acts of direct, contributory, and induced patent infringement, which will be described in more detail below. These acts are in violation of 35 U.S.C. § 271 and should be considered willful.

18. Upon information and belief, Defendants were aware that their acts were infringing and were, therefore, willful.

**THE INVENTIONS**

19. A typical AR15-pattern firearm, for example, is considered a semiautomatic firearm. The operation of a *standard disconnector* AR-pattern trigger mechanism is commenced by the trigger member being pulled by the user. The trigger member releases the hammer from the trigger sear and allows the hammer to strike the firing pin. A portion of the propellant gas is used to begin the process of sending the bolt carrier to the rear of the firearm. The rearward movement of bolt carrier cocks the hammer on the disconnector and then the bolt is allowed to return forward into battery with a new round inserted into the chamber. While this is happening, in the standard AR-pattern semiautomatic trigger, the user can either continue to hold the trigger member in a pulled (i.e., fired) state or allow the trigger to return to its reset state, in which the sear, rather than the disconnector, engages and holds the hammer in a cocked position. When the user reduces pressure on the trigger member to allow the trigger spring to reset the trigger member, the disconnector releases the hammer to engage the trigger sear.

20. In the standard AR-pattern trigger assembly, the purpose of the disconnector is to hold the hammer in a cocked position until the trigger member is reset by a trigger spring when the user lets the trigger reset. The disconnector allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to manually reset the trigger rapidly enough so that the sear engages before the bolt carrier or bolt returns to its in-battery

position. The disconnector prevents the firearm from either firing multiple rounds on a single pull of the trigger, or from allowing the hammer to simply "follow" the bolt carrier as it returns to battery without firing a second round, leaving the hammer uncocked.

21. In contrast, in a forced reset trigger mechanism, cycling of the bolt carrier or bolt causes the trigger member to be forced to the reset position and hold the trigger member there until the bolt or bolt carrier is back in battery, when it is safe for the user to pull the trigger again, without the need for a disconnector.

22. The '223 Patent describes and claims a device in which the cycling of the action causes hammer contact with the trigger member to forcefully reset the hammer and trigger member. A locking bar prevents the trigger member from being pulled again by the user until the bolt carrier has returned to the in-battery position.

23. The '003 Patent, the '336 Patent, and the '807 Patent describe and claim a similarly operating device with the additional feature that it can be selected to operate in either of two distinct modes: 1) standard disconnector semiautomatic mode and 2) forced reset semiautomatic mode.

24. The claims of the patents define the scope of the patented inventions.

## THE INFRINGING DEVICE

25. On information and belief, Defendants are currently making, using, selling, offering for sale, and/or importing a forced reset trigger assembly, which includes a three-position safety selector, known as the "Partisan Disruptor" ("the Infringing Device"), which embodies the technology claimed in the Asserted Patents.

26. On information and belief, Defendants sell and/or offer for sale the Infringing Device via the website https://shop.missionridgerange.com.

27. Exemplary photographs of the Infringing Device are shown below:







28. The Infringing Device can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger. The user can switch between safe, standard semiautomatic with disconnector, and forced reset semiautomatic modes by moving the safety selector between positions.

29. When the Infringing Device operates in the forced reset mode, the cycling of the action causes hammer contact with the trigger member to forcefully reset the hammer and trigger member. A locking bar/member prevents the trigger member from being pulled again by the user until the bolt carrier has returned to the in-battery position.

30. When in the standard semi-automatic mode, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm again.

31. When in the forced reset semi-automatic mode, rearward movement of the bolt carrier causes rearward pivoting of the hammer causing the trigger member to be forced to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

**COUNT I – INFRINGEMENT OF THE ’223 PATENT**

32. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

33. In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the ’223 patent, including but not limited to Claim 4, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the ’223 patent. Such unlicensed products include the Infringing Device.

34. On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the ’223 patent, including but not limited to Claim 4, literally and/or under the doctrine of equivalents.

35. An exemplary comparison of the Infringing Device, when assembled and used as intended, with Claim 4 of the ’223 Patent is illustrated in the chart below:

| ’223 Patent Claim 4 | Infringing Device (Disruptor) |
| --- | --- |
| 4. For a firearm having a receiver with a fire control mechanism pocket, assembly pin openings in side walls of the pocket, | The Infringing Device is for an AR-pattern firearm, which has a lower receiver with a fire control pocket and assembly pin openings in side walls of the pocket..   |
| and a bolt carrier that reciprocates and pivotally displaces a hammer when cycled, a trigger mechanism, comprising: | An AR-pattern firearm has a bolt carrier that reciprocates and pivotally displaces a hammer when cycled.   |
| a housing having transversely aligned pairs of openings for receiving hammer and trigger assembly pins; | The Infringing Device includes a housing with transversely aligned pairs of openings for receiving hammer and trigger assembly pins. |

| ’223 Patent Claim 4 | Infringing Device (Disruptor) |
|---|---|
| |     **(Plaintiff–generated renderings of the Partisan Disruptor here and below)** |
| a hammer having a sear notch and mounted in the housing to pivot on a transverse axis | The Infringing Device includes a hammer **(Blue)** with a sear notch and is mounted in the housing to pivot on a transverse axis. |

| ’223 Patent Claim 4 | Infringing Device (Disruptor) |
| --- | --- |
| |   |
| between set and |  (Set position) |
| released positions; |  |

| ’223 Patent Claim 4 | Infringing Device (Disruptor) |
|---|---|
| | **(Released position)** |
| a trigger member having a sear and mounted in the housing to pivot on a transverse axis<br><br>between set<br><br>and released positions, | The Infringing Device has a trigger member **(Green)** that has a sear and is mounted in a housing to pivot on a transverse axis.<br><br>**(Set position)**<br><br>**(Released position)** |
| the trigger member having a surface positioned to be contacted by the hammer when the hammer is displaced by the bolt carrier when cycled, | The trigger member **(Green)** has a surface positioned to be contacted by a surface of the hammer **(Blue)** |

| ’223 Patent Claim 4 | Infringing Device (Disruptor) |
|---|---|
| |   |
| the contact causing the trigger member to be forced to the set position; | The hammer **(Blue)** pivots rearward causing the trigger **(Green)** to be forced to the set position.   |
| a locking bar pivotally mounted in the housing | The Infringing Device includes a locking bar **(Red)** that is pivotally mounted in the housing. |

| ’223 Patent Claim 4 | Infringing Device (Disruptor) |
|---|---|
| |   |
| and spring biased toward a first position | The locking bar is spring biased toward a first position in which the locking bar mechanically blocks the trigger member from moving to the released position. |
| in which the locking bar mechanically blocks the trigger member from moving to the released position, |  **(First position mechanically blocked)** |
| and movable against the spring bias to a second position when contacted by the bolt carrier reaching a substantially in-battery position | The locking bar is movable against the spring bias to a second position when contacted by the bolt carrier reaches a substantially in-battery position. |
| in which the trigger member can be moved by an external force to the released position. | In this position, the trigger member can be moved by an external force (pull by the trigger finger) to the released position. |

| '223 Patent Claim 4 | Infringing Device (Disruptor) |
|---|---|
| |  |

36. On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the '223 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the Infringing Device while selling products. One example of this is the promotional material found on Defendant's website (https://www.missionridgerange.com) that informs customers to install the Infringing Device into an AR15:



37. On information and belief, Defendants know or should know that such activities induce others to directly infringe at least Claim 4 of the ’223 Patent.

38. On information and belief, Defendants also contribute to the infringement of the ’223 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the Infringing Device, such as the cam and cam lever arm. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the ’223 Patent.

39. Defendants have engaged in egregious infringement behavior with knowledge of the ’223 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the ’223 Patent and that the ’223 Patent is valid at least through the filing and service of this Complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the ’223 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the ’223 Patent.

40. By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the ’223 Patent pursuant to 35 U.S.C. § 271.

41. By their actions, Defendants’ infringement of the ’223 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

42. By their actions, Defendant's infringement of the '223 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

43. Defendants' infringement of the '223 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

44. Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

45. Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

**COUNT II – INFRINGEMENT OF THE '003 PATENT**

46. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

47. In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '003 patent, including but not limited to Claim 4, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '003 patent. Such unlicensed products include the Infringing Device.

48. On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '003 patent, including but not limited to Claim 4, literally and/or under the doctrine of equivalents.

49. An exemplary comparison of the Infringing Device, when assembled and used as intended, with claim 4 of the '003 patent is illustrated in the chart below:

<table>
<tr><th>’003 Patent Claim 4</th><th>Infringing Device (Disruptor)</th></tr>
<tr><td>4. A firearm trigger mechanism comprising:</td><td>The Infringing Device is a firearm trigger mechanism. Defendants describes the “Disruptor” as “an assisted reset trigger . . . designed for fast and hassle-free installation on the AR-15 platform” on their website. (https://shop.missionridgerange.com/products/partisan-triggers-disruptor-grn-083456001005-6676).</td></tr>
<tr><td>a housing having a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin,</td><td>The Infringing Device includes a housing (Black) that has a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin.<br><br><br>The Infringing Device is sold with hammer and trigger pins.<br><br></td></tr>
<tr><td>a hammer having a sear catch and a hook for engaging a disconnector and mounted in said housing to pivot on said hammer pin</td><td>The Infringing Device includes a hammer (Blue) that has a sear catch and a hook for engaging a disconnector. It is mounted in the housing to pivot on the hammer pin between set and released positions. The hammer is pivoted rearward by rearward movement of a bolt carrier.</td></tr>
</table>

| ’003 Patent Claim 4 | Infringing Device (Disruptor) |
|---|---|
| between set and |   **(Plaintiff-generated renderings of the Partisan Disruptor here and below)**  **(Set position)** |

| ’003 Patent Claim 4 | Infringing Device (Disruptor) |
|---|---|
| released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, |  **(Released position)** |
| a trigger member having a sear and mounted in said housing to pivot on said trigger member pin between set | The Infringing Device includes a trigger member **(Green)** that has a sear and is mounted in the housing to pivot on the trigger member pin  **(Set position)** |

| ’003 Patent Claim 4 | Infringing Device (Disruptor) |
|---|---|
| and released positions, | <br>**(Released position)** |
| said trigger member having a surface positioned to be contacted by a surface of said hammer | The trigger member **(Green)** has a surface positioned to be contacted by a surface of the hammer **(Blue)**<br><br> |
| during rearward pivoting of said hammer to cause said trigger member to be forced to said set position, | The hammer **(Blue)** pivots rearward causing the trigger **(Green)** to be forced to the set position. |

| ’003 Patent Claim 4 | Infringing Device (Disruptor) |
|---|---|
| |   |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear and sear catch are engaged in the set position |

| ’003 Patent Claim 4 | Infringing Device (Disruptor) |
|---|---|
| |  **(Set position)** |
| and are out of engagement in said released positions of said hammer and trigger member, | The sear and sear catch are out of engagement in the released position  **(Released position)** |
| a disconnector having a hook for engaging said hammer | The Infringing Device has a disconnector **(Orange)** that has a hook for engaging the hammer **(Blue)** hook |

| ’003 Patent Claim 4 | Infringing Device (Disruptor) |
| --- | --- |
| |  |
| and mounted in said housing to pivot on said trigger member pin, | The disconnect is mounted in the housing to pivot on the trigger **(Green)** member pin<br> |
| a locking member mounted in said housing to pivot on a transverse locking member pin, | The Infringing Device has a locking member **(Red)** that is mounted in the housing and it pivots on a transverse locking member pin<br> |

| ’003 Patent Claim 4 | Infringing Device (Disruptor) |
| --- | --- |
| said locking member being pivotable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position | When the locking bar **(Red)** is in the first position, the locking member blocks the trigger **(Green)** from being pulled  **(First position mechanically blocked)** |
| and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position, | When the locking bar **(Red)** is in the second position, it does not prevent the trigger **(Green)** from being pulled  **(Second position not mechanically blocked)** |
| said locking member spring biased toward said first position and adapted to be moved against said spring bias | The locking member **(Red)** is spring biased toward the first position and is moved against the spring bias to the second position by contact of the bolt carrier |

| ’003 Patent Claim 4 | Infringing Device (Disruptor) |
|---|---|
| to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and | during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position. |
| a safety selector adapted to be mounted in a fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions, | The Infringing Device includes a safety selector that is mounted in the fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions.<br><br><br>**Partisan Triggers - The Disruptor**<br>**The Disruptor (US Patent 9146067)** is an assisted reset trigger descended from the original TacCon 3MR trigger, designed for fast and hassle-free installation on the AR-15 platform. It requires no modification, gunsmithing, or fitting. Built for shooters who value precision and control, it features a three-position safety selector with Safe, Semi- Automatic, and Enhanced Semi-Automatic modes. This versatile trigger delivers a responsive and confident shooting experience while maintaining reliability and safety for users.<br>(https://partisantriggers.com/the-disruptor/) |
| whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook,<br>at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | While in the standard semi-automatic position rearward movement of the bolt carrier causes the hammer **(Blue)** to pivot and the disconnect **(Orange)** hook catches the hammer hook |

| ’003 Patent Claim 4 | Infringing Device (Disruptor) |
| --- | --- |
| | <br>**(Standard semi-automatic position)** |
| whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, | When the Infringing Device is in the forced reset semi-automatic position rearward movement of the bolt carrier causes the hammer **(Blue)** to pivot which causes the trigger **(Green)** to be forced to the set position.<br><br>**(Trigger pulled to the rear, hammer first touches the trigger)** |

| ’003 Patent Claim 4 | Infringing Device (Disruptor) |
|---|---|
| |  **(Hammer has now caused the trigger to move to the reset position)** |
| said safety selector preventing said disconnector hook from catching said hammer hook, | The safety selector prevents the disconnector **(Orange)** hook from catching the hammer **(Blue)** hook  **(Set position)** |
| and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member. | When the bolt carrier reaches a substantially in-battery position the user can pull the trigger **(Green)** without manually releasing pressure off the trigger |

| ’003 Patent Claim 4 | Infringing Device (Disruptor) |
|---|---|
| |  |

50. On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the ’003 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the Infringing Device while selling products. One example of this is the promotional material found on Defendants’ website (https://www.missionridgerange.com) that informs customers to install the Infringing Device into an AR15:



51. On information and belief, Defendants know or should know that such activities induce others to directly infringe at least Claim 4 of the ’003 Patent.

52. On information and belief, Defendants also contribute to the infringement of the ’003 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the Infringing Device, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the ’003 Patent.

53. Defendants have engaged in egregious infringement behavior with knowledge of the ’003 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the ’003 Patent and that the ’003 Patent is valid at least through the filing and service of this Complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the ’003 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the ’003 Patent.

54. By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the ’003 Patent pursuant to 35 U.S.C. § 271.

55. By their actions, Defendants’ infringement of the ’003 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

56. By their actions, Defendants' infringement of the '003 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

57. Defendants' infringement of the '003 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

58. Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

59. Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

**COUNT III – INFRINGEMENT OF THE '336 PATENT**

60. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

61. In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '336 patent, including but not limited to Claim 3, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '336 patent. Such unlicensed products include the Infringing Device.

62. On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '336 patent, including but not limited to Claim 3, literally and/or under the doctrine of equivalents.

63. An exemplary comparison of the Infringing Device with Claim 3 of the '336 patent, when assembled and used as intended, is illustrated in the chart below:

| ’336 Patent Claim 3 | Infringing Device (Disruptor) |
|---|---|
| 3. A firearm trigger mechanism comprising: | The Infringing Device is firearm trigger mechanism. |
| a housing having a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin, | The Infringing Device includes a housing that has first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin.<br><br><br>The Third Infringing Devise is sold with hammer and trigger pins.<br><br> |
| a hammer having a sear catch and a hook for engaging a disconnector and mounted in said housing to pivot on said hammer pin | The Infringing Device includes a hammer (Blue) that has a sear catch and a hook for engaging a disconnector. It is mounted in the housing to pivot on the hammer pin between set and released positions. The hammer is pivoted rearward by rearward movement of a bolt carrier. |

| ’336 Patent Claim 3 | Infringing Device (Disruptor) |
|---|---|
| between set and |   (Plaintiff-generated renderings of the Partisan Disruptor here and below)  (Set position) |

| ’336 Patent Claim 3 | Infringing Device (Disruptor) |
|---|---|
| released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, |  (Released position) |
| a trigger member having a sear and mounted in said housing to pivot on said trigger member pin<br>between set | The Infringing Device includes a trigger member (Green) that has a sear and is mounted in the housing to pivot on the trigger member pin  (Set position) |

| ’336 Patent Claim 3 | Infringing Device (Disruptor) |
|---|---|
| and released positions, | <br>(Released position) |
| said trigger member having a surface positioned to be contacted by a surface of said hammer | The trigger member (Green) has a surface positioned to be contacted by a surface of the hammer (Blue)<br><br> |
| during rearward pivoting of said hammer to cause said trigger member to be forced to said set position, | The hammer (Blue) pivots rearward causing the trigger (Green) to be forced to the set position |

| ’336 Patent Claim 3 | Infringing Device (Disruptor) |
| --- | --- |
| |   |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear and sear catch are engaged in the set position  |

| ’336 Patent Claim 3 | Infringing Device (Disruptor) |
|---|---|
| and are out of engagement in said released positions of said hammer and trigger member, | (Set position)<br><br>The sear and sear catch are out of engagement in the released position<br><br><br><br>(Released position) |
| a disconnector having a hook for engaging said hammer<br><br>and mounted in said housing to pivot on said trigger member pin, | The Infringing Device has a disconnector (Orange) that has a hook for engaging the hammer (Blue) hook<br><br><br><br><br>The disconnect is mounted in the housing to pivot on the trigger (Green) member pin |

| ’336 Patent Claim 3 | Infringing Device (Disruptor) |
|---|---|
| |  |
| a locking member mounted in said housing to pivot on a transverse locking member pin, | The Infringing Device has a locking member (Red) that is mounted in the housing and it pivots on a transverse locking member pin.   |
| said locking member being pivotable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position | When the locking bar (Red) is in the first position, the locking member blocks the trigger (Green) from being pulled |

| ’336 Patent Claim 3 | Infringing Device (Disruptor) |
|---|---|
| | <br>(First position mechanically blocked) |
| and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position, | When the locking bar (Red) is in the second position, it does not prevent the trigger (Green) from being pulled. |
| said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and | <br>(Second position not mechanically blocked)<br>The locking member (Red) is spring biased toward the first position and is moved against the spring bias to the second position by contact of the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position. |

| ’336 Patent Claim 3 | Infringing Device (Disruptor) |
|---|---|
| a safety selector adapted to be mounted in a fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions, | The Infringing Device includes a safety selector that is mounted in the fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions..   |
| said safety selector configured such that, when said safety selector is in said forced reset semi-automatic position, said safety selector causes said disconnector to be repositioned and in doing so prevents said disconnector hook from catching said hammer hook, | While in the forced reset semi-automatic position the disconnect (Orange) moves to a position that does not allow the disconnector hook to catch the hammer (Blue) hook  (Forced reset semi-automatic position) |
| whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, | While in the standard semi-automatic position rearward movement of the bolt carrier causes the hammer (Blue) to pivot and the disconnect (Orange) hook catches the hammer hook |

| ’336 Patent Claim 3 | Infringing Device (Disruptor) |
| --- | --- |
| at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | <br>(Standard semi-automatic position) |
| whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, | When the Infringing Device is in the forced reset semi-automatic position rearward movement of the bolt carrier causes the hammer (Blue) to pivot which causes the trigger (Green) to be forced to the set position.<br><br>(Trigger pulled to the rear, hammer first touches the trigger) |

| ’336 Patent Claim 3 | Infringing Device (Disruptor) |
|---|---|
| |  (Hammer has now caused the trigger to move to the reset position) |
| said safety selector preventing said disconnector hook from catching said hammer hook, | The safety selector prevents the disconnector (Orange) hook from catching the hammer (Blue) hook  (Set position) |
| and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member. | When the bolt carrier reaches a substantially in-battery position the user can pull the trigger (Green) without manually releasing pressure off the trigger |

64. On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the ’336 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate

direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the Infringing Device while selling products. One example of this is the promotional material found on Defendants' website (https://www.missionridgerange.com) that informs customers to install the Infringing Device into an AR15:




65. On information and belief, Defendants know or should know that such activities induce others to directly infringe at least Claim 3 of the '336 Patent.

66. On information and belief, Defendants also contribute to the infringement of the '336 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the Infringing Device, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '336 Patent.

67. Defendants have engaged in egregious infringement behavior with knowledge of the '336 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and

continue to constitute infringement of the ’336 Patent and that the ’336 Patent is valid at least through the filing and service of this Complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the ’336 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the ’336 Patent.

68. By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the ’336 Patent pursuant to 35 U.S.C. § 271.

69. By their actions, Defendants’ infringement of the ’336 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

70. By their actions, Defendants’ infringement of the ’336 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

71. Defendants’ infringement of the ’336 patent is exceptional and entitles Plaintiffs to attorneys’ fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

72. Defendants’ acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs’ business, sales, reputation, and good-will.

73. Plaintiffs have been substantially harmed by Defendants’ infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys’ fees.

## COUNT IV – INFRINGEMENT OF THE ’807 PATENT

74. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

75. In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the ’807 patent, including but not limited to Claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the ’807 patent. Such unlicensed products include the Infringing Device.

76. On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the ’807 patent, including but not limited to Claim 1, literally and/or under the doctrine of equivalents.

77. An exemplary comparison of the Infringing Device, when assembled and used as intended, with Claim 1 of the ’807 patent is illustrated in the chart below:

| **’807 Patent Claim 1** | **The Infringing Device (Disruptor)** |
|---|---|
| 1. A firearm trigger mechanism comprising: | The Infringing Device is a firearm trigger mechanism. |
| a hammer having a sear catch and a hook and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis | The Infringing Device includes a hammer **(Blue)** that has a sear catch and a hook for engaging a disconnector. It is mounted in the fire control mechanism pocket to pivot on a transverse hammer pivot axis between set and released positions. The hammer is pivoted rearward by rearward movement of a bolt carrier. |

| ’807 Patent Claim 1 | The Infringing Device (Disruptor) |
| --- | --- |
| between set and |   **(Plaintiff-generated renderings of the Partisan Disruptor here and below)**  **(Set position)** |

| ’807 Patent Claim 1 | The Infringing Device (Disruptor) |
|---|---|
| released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, |  **(Released position)** |
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis<br><br>between set | The Infringing Device includes a trigger member **(Green)** that has a sear and is mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis<br><br><br>**(Set position)** |

| ’807 Patent Claim 1 | The Infringing Device (Disruptor) |
| --- | --- |
| and released positions, |  **(Released position)** |
| said trigger member having a surface positioned to be contacted by a surface of said hammer | The trigger member **(Green)** has a surface positioned to be contacted by a surface of the hammer **(Blue)**   |
| during rearward pivoting of said hammer to cause said trigger member to be forced to said set position, | The hammer **(Blue)** pivots rearward causing the trigger **(Green)** to be forced to the set position |

| ’807 Patent Claim 1 | The Infringing Device (Disruptor) |
|---|---|
| |   |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear and sear catch are engaged in the set position |

| ’807 Patent Claim 1 | The Infringing Device (Disruptor) |
|---|---|
| |  **(Set position)** |
| and are out of engagement in said released positions of said hammer and trigger member, | The sear and sear catch are out of engagement in the released position  **(Released position)** |
| a disconnector having a hook for engaging said hammer hook | The Infringing Device has a disconnector **(Orange)** that has a hook for engaging the hammer **(Blue)** hook |

| ’807 Patent Claim 1 | The Infringing Device (Disruptor) |
|---|---|
| |   |
| and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, | The disconnect is mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis<br> |
| a locking member adapted to be movably mounted in the fire control mechanism pocket, | The Infringing Device has a locking member **(Red)** that is movably mounted in the fire control mechanism pocket and it is movable between a first position and a second position. |

| **’807 Patent Claim 1** | **The Infringing Device (Disruptor)** |
|---|---|
| |   |
| said locking member being movable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position | When the locking bar **(Red)** is in the first position, the locking member blocks the trigger **(Green)** from being pulled  **(First position mechanically blocked)** |
| and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position, | When the locking bar **(Red)** is in the second position, it does not prevent the trigger **(Green)** from being pulled |

| ’807 Patent Claim 1 | The Infringing Device (Disruptor) |
| --- | --- |
| |  **(Second position not mechanically blocked)** |
| said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and | The locking member **(Red)** is spring biased toward the first position and is moved against the spring bias to the second position by contact of the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position |
| a safety selector adapted to be movably mounted in the fire control mechanism pocket to move between safe, standard semi-automatic, and forced reset semi-automatic positions, | The Infringing Device includes a safety selector that is mounted in the fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions.   |

| ’807 Patent Claim 1 | The Infringing Device (Disruptor) |
|---|---|
| whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook,<br><br>at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | While in the standard semi-automatic position rearward movement of the bolt carrier causes the hammer **(Blue)** to pivot and the disconnect **(Orange)** hook catches the hammer hook<br><br>**(Standard semi-automatic position)** |
| whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, | When the Infringing Device is in the forced reset semi-automatic position rearward movement of the bolt carrier causes the hammer **(Blue)** to pivot which causes the trigger **(Green)** to be forced to the set position.<br><br>**(Trigger pulled to the rear, hammer first touches the trigger)** |

| ’807 Patent Claim 1 | The Infringing Device (Disruptor) |
|---|---|
| |  **(Hammer has now caused the trigger to move to the reset position)** |
| said safety selector preventing said disconnector hook from catching said hammer hook, | The safety selector prevents the disconnector **(Orange)** hook from catching the hammer **(Blue)** hook.  **(Set position)** |
| and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member. | When the bolt carrier reaches a substantially in-battery position the user can pull the trigger **(Green)** without manually releasing pressure off the trigger. |

| ’807 Patent Claim 1 | The Infringing Device (Disruptor) |
|---|---|
| |  |

78. On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the ’807 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the Infringing Device while selling products. One example of this is the promotional material found on Defendants’ website (https://www.missionridgerange.com) that informs customers to install the Infringing Device into an AR15:



79. On information and belief, Defendants know or should know that such activities induce others to directly infringe at least Claim 1 of the '807 Patent.

80. On information and belief, Defendants also contribute to the infringement of the '807 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the Infringing Device, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '807 Patent.

81. Defendants have engaged in egregious infringement behavior with knowledge of the '807 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the '807 Patent and that the '807 Patent is valid at least through the filing and service of this Complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the '807 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the '807 Patent.

82. By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the '807 Patent pursuant to 35 U.S.C. § 271.

83. By their actions, Defendants' infringement of the '807 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

84. By their actions, Defendants' infringement of the '807 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

85. Defendants' infringement of the '807 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

86. Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

87. Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgement against Defendants as follows:

a. Each of the Asserted Patents has been and continues to be infringed by Defendants;

b. Defendants' infringement of each of the Asserted Patents has been, and continues to be, willful;

c. Each of the Asserted Patents is enforceable and not invalid;

d. A preliminary injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of each of the Asserted Patents during the pendency of this case, or other such equitable relief as the Court determines is warranted;

e. A permanent injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of each of the Asserted Patents, or other such equitable relief as the Court determines is warranted;

f. An award of damages adequate to compensate Plaintiffs for the infringement of each of the Asserted Patents that has occurred, together with pre-judgment interests and costs, post-judgment interests and costs, and an accounting;

g. An award of all other damages permitted by 35 U.S.C. § 284, including increased damages up to three times the amount of compensatory damages found;

h. A finding that this action is an exceptional case under 35 U.S.C. § 285 and an award to Plaintiffs of their costs and attorneys' fees incurred in this action; and

i. Any and all other relief, at law or equity, to which Plaintiffs may show themselves to be entitled or which this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, under Rule 38 of the Federal Rules of Civil Procedure, request a trial by jury of any issues so triable by right.

DATED: March 13, 2026

Respectfully submitted,

*<u>/s/ Matthew A. Colvin</u>*______________
Matthew A. Colvin
Texas Bar No. 24087331
Carl E. Bruce
Texas Bar No. 24036278
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
E-mail: colvin@fr.com
bruce@fr.com
Tel: (214) 747-5070
Fax: (214) 747-2091

Ben Christoff
DC Bar No. 1025635
FISH & RICHARDSON P.C.
1001 Maine Avenue SW, Suite 1000
Washington, DC 20024
E-mail: christoff@fr.com
Tel: (202) 783-5070
Fax: (202) 783-2331

Glenn D. Bellamy
Ohio Bar No. 0070321
(*pro hac vice* forthcoming)
WOOD HERRON & EVANS LLP
600 Vine Street, Suite 2800
Cincinnati OH 45202
E-mail: gbellamy@whe-law.com
Tel: (513) 707-0243
Fax: (513) 241-6234

***Attorneys for Plaintiffs***
*ABC IP LLC and Rare Breed Triggers, Inc.*